NEW-YORK,
Sept. 1822.

The People *vs.* Charles Gardner.    *On Counterfeit Notes.*

The People
*vs.*
Chas. Gardner.

THE prisoner, an active good looking young man, was indicted and brought up for trial, at this term, for having in his possession with intention to utter and pass off to others, two counterfeit notes ; one $5 on the Mechanic's Bank of the city of New York; one $10 on the Merchant's Bank of Providence, Rhode Island ; to which indictment the prisoner, by Messrs. M'Euen and Graham, his counsel, plead not guilty. The facts, as detailed by the witnesses, appeared to be as follows : about the close of the last term, information was obtained at the police-office, that *Ward's Island,* in the East River, above the city, had become a retreat for felon, who made it a repository for the plunder they obtained, in the city and elsewhere.

*On an indictment for having in possession counterfeit money, with intention to pass it, the fact of possession must be proved by positive testimony ; the intention to pass it may be proved from circumstances.*

To ascertain the fact, and stop the progress of the evil, two of the police magistrates, the high constable, and seven or eight officers of the police, went up to the place : they found that the party they were in pursuit of were absent from the island. They found a very large mastiff dog placed at the corner of the house as a sentinel, to warn the inmates of the approach of danger. He threatened to be troublesome, and was secured ; after taking proper measures, and placing themselves in proper positions, in and about the house, they waited the return of the party ; presently the saw approaching the shore, three men and one woman ; and as soon as they landed, the woman immediately walked up to the house, and whistled for the dog ; but notwithstanding no answer was received, she passed along up to the house, until she walked inside the door, where she was secured by the officers ; the men were severally arrested as they came into the door, secured in irons, conveyed to the city, and committed to

NEW-YORK.  Bridewell.   Among the number, was Charles Gardner, the
Sept. 1822.  prisoner at the bar.

The People       The complaint however, of the present indictment, was
  vs.
C. Gardner.  for a felony of a different description.; immediately on the
arrest of Gardner, he was observed to throw his hand gent-
ly upon the ceiling of the window, and upon raising it
a pocket book was observed laying upon the place
he had reached his hand. The pocket book was imme-
diately taken possession of by the officers, and it was
found to contain the two counterfeit notes in question.   It
also contained the terms, abbreviations and initials known
to be in use among counterfeiters. On searching the house,
two tin boxes were found hidden under the floors, and
weather-boarding, corresponding in amount and date, &c.
to those found in the pocket book of the prisoner.

These facts were made out by the witnesses, who were
examined on the part of the people.   The case was sum-
med up by Messrs. Graham and M'Euen for the prisoner,
in which they contended that although their client had
been found " in a den of thieves," and had also been
found in possession of counterfeit money, yet no evidence
had yet been offered that he ever intended to pass it ; he
had offered it to no one ; no one could say that he directly
or indirectly attempted to put off his paper upon them : he
might have received it from others, for a valuable conside-
ration, not knowing it was bad ; every person is liable to
receive false money, and spurious paper ; we often do
receive it ; very few men in the community but at some
time or other receive it ; yet no man thinks of indicting
them, &c.

*Maxwell, District Attorney,* replied : after commenting
generally upon the case, observed, that this was not a case
of a man receiving counterfeit money in the ordinary trans-

actions of business, where he is often to be pitied, but not to be punished; but this was a case, where a young man without any visible means of support, chooses to connect himself with a gang of thieves and notorious counterfeiters; pursuing no employment but the commission of crimes; found in the actual possession of counterfeit money, and stolen goods to a large amount, giving no account how he came by them; offering no proof of character—such was this case. And he would venture to say, that in this and every similar one, it would be the duty of the jury to convict, and the court to severely punish.

*By the Court.*—The Recorder recapitulated the principal facts to the jury, and concluded by observing that "all the witness agreed in every fac tthey had deposed "to. The circumstances of the prisoner's laying his pock- "et-book in the window was positively sworn to by three "officers, that the pocket-book contained the notes describ- "ed in the indictment; that the entries made of the pur- "chase of counterfeit money in the pocket-book, was the "language known to be used among the venders and buy- "ers of spurious notes; that the bills found in the pocket- "book corresponded to those found in the accesses of the "house; exhibiting an extensive concern, carried on by the "prisoner and others: that the prisoner had not shown that "he was a man of good character, as he ought to have "done, if it was in his power; and that the fact of the pos- "session of large quantities of spurious notes was posi- "tively sworn to by respectable witnesses; his intention to "pass it is to be made out to the satisfaction of the jury. "From all the circumstance of the case, it remained for "the jury to say whether he had this money in his pos- "session with intention to pass it or not; if they had a "reasonable doubt, that doubt ought to operate in favor

"of the prisoner; if on the contrary, they were convinced "of his guilt, they would pronounce him so." The jury found him guilty.